I'll call case number 22-2039, United States v. Freeman. Mr. Jackson. May it please the court. Robert Jackson on behalf of defendant appellant Zechariah Freeman. The guilty verdict in this case is simply not worthy of confidence. First, the evidence was insufficient to prove two essential elements of sexual abuse beyond a reasonable doubt. Second, and compounding the insufficiency claim, is that the jury instructions were incomplete, and that they failed to instruct the jury that it must find beyond a reasonable doubt that Jane Doe was incapacitated or otherwise incapable of declining participation in the sexual act. And third, Mr. Freeman was deprived of his full complement of preemptory challenges, which resulted in an alternate juror who Mr. Freeman would have struck being impounded on the jury. I'm going to focus and begin with ground two, the instructional claim. And the district court committed a reversible error by failing to include an essential element of the defense and the jury instructions. And the two elements of sexual abuse that are at issue with respect to this claim are one, that Jane Doe was incapable of appraising the nature of the conduct, or physically incapable of declining participation in that sexual act, or physically incapable of communicating an unwillingness to engage in that sexual act. And that's the statutory language at 2242 too, and it's awfully wordy. I'm going to reduce that language to referring to Jane Doe as being incapacitated or otherwise incapable of consent, just for efficiency, and that's kind of how it was referred to in the trial transcripts. And the second element at issue is that the defendant knew that Jane Doe was incapacitated or otherwise incapable of consent. But here the district court refused to instruct the jury as to whether Jane Doe herself was in fact incapacitated or incapable of consenting to the sexual act. And this occurred because the district court utilized a Fifth Circuit pattern instruction that somewhat merged these two elements together. And here Mr. Freeman's jury was only instructed that it must find, and I'm going to quote the jury instruction, that the defendant knew that Jane Doe was incapable of appraising the nature of the conduct or physically incapable of declining participation in that sexual act or physically incapable of communicating and willingness to engage in that sexual act. And the result... So don't you have both elements there then? You have defendant's knowledge and you have the incapacity of the victim. I don't believe so, Your Honor. And that's because the jury was never specifically asked to determine whether Jane Doe was incapacitated. What is the requirement? The jury needs to be provided with the elements, right? That's correct. And your contention is that did not happen here? That did not happen because of this instruction that merged these two elements together. Okay, so your challenge is really not to the phrasing of the instruction. You're challenging the lack of an element. Yes, Your Honor. The jury was not instructed that it had to specifically find beyond a reasonable doubt whether Jane Doe was incapacitated or otherwise incapable of consent. That didn't happen. And the only way that in your position, the only way that could happen is if it was disaggregated, if it was separately listed as a requisite finding, that that element was listed that way. Yes, Your Honor. I believe that's correct. And conceptually, if I'm a juror and I'm looking at these instructions and they're given to the jury, it's like a checklist. Well, do we believe this beyond a reasonable doubt? Yes. Yes. Yes, but there is no checkbox for whether Jane Doe was actually incapacitated. So that's missing from the checklist here. And Mr. Freeman unequivocally requested that the jury be specifically instructed as to this separate element. There were rounds and rounds of briefing, multiple proposed jury instructions, multiple sets of draft instructions from the court. There's an instruction conference before the jury is instructed, and he continues to bring this up throughout. It's simply, I believe this is error, and the error wasn't harmless, and we're subject to harmless error review. Obviously, under the Netter case, we're subject to harmless error review. Here, this court has an interesting standard of review with respect to the omission of an element from jury instructions, and United States v. Prince is the case I'm referring to. In there, the court's very strong on saying that ordinarily, if we're missing an element from a jury instruction, ordinarily that's going to result in reversal. And the only time that this court's going to find the omission of an element harmless is where that omitted element was uncontested and supported by overwhelming evidence. And I think the two cases to look to about that harmlessness review are Wolfname and Binford. And in Binford, the court talks about reversal's only appropriate where the omitted element is neither overwhelming nor controverted. Here, there was great dispute at trial as to whether Jane Doe was asleep at the time of the sexual act. That's certainly controverted. It was also disputed as to whether Jane Doe's intoxication was great enough to render her incapacitated or incapable of consent for purposes of 2242. Her testimony was at odds with itself, and it's cited there in the brief. The next morning, Jane Doe gets up and goes out to the kitchen and talks to her friend, Mariah Smith. And Jane Doe says, well, I wasn't that hungover. And that's her quote. But in her trial testimony, she said more than that. She said she was asleep when Mr. Freeman, she woke up and he was having sex with her. She told her friend that. And then there's the text from Mr. Freeman saying, hey, I'm sorry. A friend tells Mr. Freeman about this conversation, and Mr. Freeman texts the victim and saying, sorry that I didn't wake you up when I had sex with you. I mean, it's pretty close to overwhelming evidence that she was asleep and incapable of consent. And I'd respectfully disagree, Your Honor. I think there's a great conflict in the evidence. And this is with respect to the jury instruction claim. And if we have time and we get into the insufficiency claim, we can talk about conflicting evidence and how the court views that. But, I mean, it really strikes me as odd that the trial testimony from Jane Doe with respect to her level of intoxication, she says, well, I drank half of a big bottle of Seagram's plus random stuff. And one of the other party goers describes this bottle of Seagram's as, quote, like a gallon. It was the big one. So I understand that to mean that we're talking about a, quote, handle of hard liquor. And I looked this up last night. That's 1.75 liters or 59 ounces of hard liquor. So to me, Doe's testimony is incredible that she would drink half of that, or not be in the hospital, but she's up the next morning. Counsel, this is one of my concerns about your sufficiency claim that I'd like you to address. It seems that you're asking us to evaluate credibility more than sufficiency, which we certainly cannot do. Why is your sufficiency challenge? I know you're speaking about your jury instruction claim now, but how is your sufficiency challenge not a challenge to the credibility of the evidence? I'll go ahead and move into the sufficiency challenge. And I fully understand that this court's not going to weigh conflicting evidence with the sufficiency challenge. And there is conflicting evidence here, but with the sufficiency challenge, this court's viewing the evidence in the light most favorable to the government. But it still has to find that the government met its burden beyond a reasonable doubt. That's the balancing parameter here. We're not talking about a sum evidence standard or a scintilla of evidence standard. There's obviously some evidence here, but the standard for sufficiency is more than that. And I think as we conceptualize the sufficiency claim, it's very helpful, at least to me it was very helpful, to go take a real close look at that AS case, the Juvenile Delinquency Act case that's cited by the government in its brief. And there's the courts where Juvenile Delinquency Act case proceeds to bench trial. And the standard of review for a sufficiency claim at the bench trial is a little bit different than the standard of review of a jury trial. With the bench trial, the evidence is viewed in the light most favorable to the verdict. It's a more government-friendly or defendant-lesson-friendly standard. They're at the bench trial. And with a bench trial, a guilty verdict is going to be upheld if the evidence rationally supports two conflicting hypotheses. So if the evidence was 50-50 and you have a bench trial and the defendant raises sufficiency, the defendant loses. But here with the jury trial, conceptually to me, if we're talking about 50-50 evidence, if we're in equipoise on a sufficiency claim and it's a very hard standard, defendant wins. We're talking about a jury trial and the evidence is in equipoise. Conceptually, that's how I view the sufficiency claim here. I do want to talk about the text message. Judge Moritz brought this up, and that's certainly the elephant in the room here. I don't know that we would have even had a prosecution but for Mr. Freeman's text message. Mr. Freeman's a relatively old adult. He's 42 at the time that this occurs. He has zero criminal history points. This just doesn't seem like something that's going to happen that he's going to do. But he sends out this text message that's precipitated by an earlier text message, not from Jane Doe, but from Mariah Smith, the woman who invited him to the party, that accuses him of, quote, having sex with Jane Doe. And then she, quote, then became a willing participant. And Mr. Freeman freaks out. He, quote, has a panic attack. That's what he testifies to. So he sends off this text message to Jane Doe and he apologizes. And he says, I'm sorry about having sex with you without waking you up and making sure you were into it. I'd like to talk and hear what you have on it. Well, Mr. Freeman obviously doesn't know about Section 2242 and how those prosecutions occur. He testifies that this text message wasn't an admission. It was to open a dialogue and see what happened, what was wrong, and see if he could fix things. He was surprised. He was shocked about what Ms. Smith had alleged in her text message. Well, he didn't say he was shocked about what she alleged. He seemed to concede it. He said, I'm sorry I did this. He didn't say, we need to talk about whether I did this or your view that I did this. He said, I'm sorry that I did this. And he testified that he had a panic attack. This was a mechanism by him to open a dialogue that he would, quote, assume the other person's position in this disagreement. It's really shocking to me that these three character witnesses get up and talk about the text message in the transcript. These three women that are all very well-spoken, professional women, an aerospace physicist, people who work for the state of New Mexico, a woman who works with rape survivors and is a survivor herself, and they still are on Mr. Freeman's side and say, hey, we know about the text message. We don't believe it's an admission. We believe that Mr. Freeman was trying to set things right or figure out what was going on or try to open a dialogue. To me, that's very important. The last thing I want to say about the evidence, and I look at this whole trial transcript, and it's just so troubling to me. There's a scenario of people drinking at a house party and then two of them have sex. That's just not unique. That happens. It happens. It happens all the time. And it's further not unique that once these same people sober up, the next day that one or both of them may regret those activities, that in the heat of the moment that that was a bad idea. So here to me, I read this whole transcript, and I don't see sexual abuse. Instead, I see this case of buyer's remorse the next morning when Jane Doe is confronted by her very good friend of many years for having sex with the man that the good friend invited over to this house party. Unfortunately, that's what I see when I look at this whole transcript. And I'll reserve my remaining time for rebuttal. Thank you. Good morning, and may it please the Court. Elias Kim of the United States. I'd like to start by briefly addressing the sufficiency of the evidence issue, and I hope to spend most of my time on the other two issues. There's overwhelming evidence that Jane Doe lacked the capacity to consent when Mr. Freeman penetrated her. To start, Ms. Doe testified that she fell asleep and that when she woke up, Mr. Freeman was on top of her having sex with her. Now, every court to have considered this issue has determined that such testimony is by itself sufficient for a jury to find that the victim lacked the capacity to consent. And that's not all the jury heard and viewed here. The jury heard from a corroborating witness who testified that Ms. Doe has been telling exactly the same story since the morning after the assault. The jury viewed a text message from Mr. Freeman two days after the assault in which he apologized, quote, for having sex with you without waking you up and making sure you're into it. And the jury heard undisputed testimony that Ms. Doe had consumed alcohol for more than six hours, that she finished half a bottle of hard liquor on her own, and that after taking a tequila shot later in the evening, she got sick and immediately fell asleep. And finally, the jury heard from four witnesses who attended the party, all of whom agreed that Ms. Doe was the drunkest person there and that she was visibly intoxicated. Did she pass out? Not that that's required, but did she pass out from drinking? Judge Briscoe, I don't think the record is clear on that. I'm not sure whether the alcohol caused her to pass out or whether she was just very drunk and did fall asleep. I think the difference doesn't really matter here because we think that her being asleep was by itself sufficient. The bottom line, though, is that taking all this together, I don't think it was just reasonable for the jury to conclude that Ms. Doe lacked the capacity to consent. I really think that's the only conclusion a reasonable jury could have reached. And in this case, the same— Were they asked to reach that conclusion, to move you into the jury instruction argument? Yeah, absolutely. So on the jury instruction, the district court instructed the jury that it had to determine whether Mr. Freeman knew that Ms. Doe lacked the capacity to consent. And I think the jury would have taken this instruction to mean that it had to make an initial finding about whether Ms. Doe, in fact, lacked the capacity to consent. How could they have known that if the element was omitted? Well, I think there's two important reasons that are specific to this case, Your Honor. And this Court's precedent makes clear that a jury instruction has to be viewed in the context of the entire trial. And so here, both parties made clear in their closing arguments that the jury had to make a finding on this element. And with your indulgence, I'll just read two brief excerpts. So in our closing argument, we read the disputed instruction and told the jury that, quote, we need to prove that both the victim was incapable of consenting and that the defendant knew that. Similarly, in Mr. Freeman's closing argument, and that's right, and that's at page 28 of Volume 3 of the record. Similarly, in Mr. Freeman's closing argument, his counsel explained both the capacity element and the knowledge element and told the jury that, quote, to return a verdict of guilty, you must find that the government has proved both beyond all reasonable doubt. This was the central disputed issue of fact at trial. And I'm just not sure how it's plausible that the jury could have heard those closing arguments after having heard hours of testimony about whether Ms. Doe lacked the capacity to consent to sex and then read this instruction and assumed that the district court had resolved that issue behind the scenes. So are the points that you just made pointing to the closing arguments, does that go to establishing the government's burden on harmlessness? No, I don't think so. I think that goes to how the jury would have understood the instruction in the context of the trial. You know, I think in general, when a jury's instruction instructed that it needs to find that a defendant knew that some condition existed, its first reaction is going to be, well, did that condition in fact exist? Now, I don't think you need to make that conclusion as a general matter or say that all instructions of this form are OK. But I think in the context of the trial, given the centrality of this issue to the trial and the closing arguments that both parties made, the jury would have known this. And I think that gets to my second specific reason to this trial, or second reason that's specific to this case, which is that the district court made clear to the jury that the role of the jurors was, quote, to serve as the judges of the facts. The district court said that it was going to be responsible for making legal and evidentiary rulings. And so I think that would have been a further indication to the jury that as the judges of the facts, they were responsible for making all disputed factual findings, including about whether Ms. Doe lacked the capacity to consent. But to get to your earlier question, Judge Rossman, I do think that even if you think that this instruction was erroneous, the error was harmless here. And I know it's high standard. It's whether a reasonable jury, whether it's clear beyond a reasonable doubt that a rational jury could have found the defendant guilty absent the error, or would have found the defendant guilty absent the error. And that's a high standard, but I think this is a unique case. I think Mr. Freeman's counsel said earlier that this is not unique, but it is unique, and it's because we have a direct admission from the defendant, freely and directly given, outside the environment of some sort of coercive interrogation, where he said, I'm sorry for having sex with you without waking you up and making sure you're into it. I'm just not sure how any reasonable jury could view that and believe anything he went on to say at trial. And of course, that's not all we have. We also have Ms. Doe's testimony. We also have corroboration from Ms. Smith. And we have all this undisputed evidence that Ms. Doe drank a significant amount of alcohol that night. If we look at the statute that underlies this charge, does it set out elements you must prove? One, two, three. It does, Your Honor. And it says you need a knowing sexual act, and the victim needs to either be incapable of the prison. And they're broken out in separate sections? That's right, Your Honor. It's always a good idea maybe to follow the statute and set out your instruction to reflect the statute. I take your point, Your Honor. And I do think that actually Mr. Freeman's proposed instruction would have been clearer. And I don't think that's a basis for reversing the conviction here. As the Supreme Court explained in Griffin v. United States, even when the defendant has proposed what would be a preferable instruction, that's not a basis for reversing an otherwise valid conviction. Now, we'd have no problem if you ruled for us but made clear to district courts going forward that this is generally what you should be in the practice of doing. I think the reason that we did it in this case is only one court of appeals has said, you know, this is a model pattern instruction for this offense. And, you know, we generally think that we're a safer gun. Well, safer, though, again, safe harbor is the statute. That's right, Your Honor. And I take your point that we shouldn't be reflexively looking at pattern instructions. I think the circuit's great, but, you know. And I can see that that's not dispositive here. I don't think we'd ever say that we should just follow all pattern instructions and that gets us out of having to follow the statute. We just think that's further evidence that what we did here was within the bounds of what was reasonable and would have adequately conveyed the law. So your best argument has to be that this instruction, as given, incorporated both of these elements. That's right. And we do think that both elements needed to be proved. We just think it would have been clear both from the instruction itself but then also from the surrounding context that both elements did need to be proved. And if we disagree, you're arguing the evidence was so overwhelming it was harmless? That's right, Judge Moritz. Yeah, and I know that there's been this reference both in the Prince case  to this idea that error is only harmless if it's uncontested. But I want to push back on that a little bit, and I think there's a little bit more breathing room here. In Netter v. United States, the Supreme Court said in general the standard is whether it's clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. And then it applied that standard to the facts of the case, and it looked at the record and said, okay, here the element was uncontested and there was overwhelming evidence, so we're going to find that. Well, in Kahn we were looking at unless otherwise authorized. I mean, I have trouble with my head getting Kahn to this case. Oh, I just mean Kahn is this Court's most recent recitation of the harmlessness standard in the context of an admitted element, and so that seems to be what we're working with. I think a good example of a case in which the element was contested but this Court nevertheless found that the error was harmless is United States v. Hawley. That's a case in which the defendant was charged with aggravated sexual abuse, which requires a finding that the defendant caused the victim to fear serious bodily harm, and the district court had omitted that fear of serious bodily harm requirement from its instruction. But this Court found that that was harmless, even though the defendant was contesting that the act had occurred at all. You know, I think that's not exactly on point here, but I think it just shows that even if the defendant mounts some sort of defense, the Court can still find the error to be harmless, and here I think the evidence is just overwhelming. I'm just not sure how there could be any explanation for that text message. As you pointed out before, Judge Moritz, it wasn't, you know, I'm sorry I didn't know you were asleep or, you know, I hope that we can figure out what actually happened. It was, I'm sorry for having sex with you without waking you up. I think that's pretty unambiguous. I'm not sure how a reasonable jury could interpret it otherwise. I think with the remainder of my time, I'd like to talk about the peremptory challenge issue, which I know didn't come up before, but we think clearly the peremptory challenge is allotted by Rule 24b can be used only during the selection of the 12-member jury, not during the selection of alternates. And that's for three reasons, one textual, one structural, and one historical. Starting with the text, Rule 24b allots challenges to, quote, prospective jurors. And in this context, I think prospective juror clearly means someone who's being considered for selection to the jury, not someone who's being considered for selection as an alternate. That's why Rule 24 separately uses the phrase prospective alternate juror. I think the structure of the rule confirms this because what it does is it sets up two separate processes, one for the selection of jurors and one for the selection of alternate jurors. And then it uses the word prospective within that context to refer to the individuals being considered in each process. So again, a prospective juror is someone being considered in the first process, and a prospective alternate juror is someone being considered in the second process. So when Rule 24b allots peremptory challenges for prospective jurors, it's saying they can only be used when the initial jury is being selected. And even if you thought that was erroneous, we think that there's clearly no prejudice to Mr. Freeman here. Mr. Freeman pointed out some problems with Juror 33, but Mr. Freeman has never argued and does not argue today that Juror 33 was biased or otherwise should have been removed for cause. Why is that the standard? I'm curious. You assert that in your briefing, but I'd like you to speak to it a little bit more. Why is the standard here that Mr. Freeman would have to explain that this alternate who was in fact seated could be biased? Why is that the standard? So that comes from the three decisions of the Supreme Court, Rivera v. Illinois, Martinez-Salazar, and Ross v. Oklahoma. And in those cases, the Supreme Court explained that the erroneous denial of the peremptory challenge is not structural error. That's because it's not a constitutional error. It's not required. Peremptory challenges are not required by the Sixth Amendment. And we haven't seen a scenario in which it would constitute some sort of due process challenge or otherwise. So there needs to be some sort of prejudice. And I think when you're thinking of what prejudice is in this context, you have to think, what is the harm that peremptory challenges are meant to prevent? And it's the seating of a biased juror. And I think it's hard to draw a different line because once because the way we think of whether a juror is fit to serve is pretty binary. Either they're biased and they can't serve or they can consider the case fairly. So do you think that the prejudice inquiry is more doctrinal than fact specific? Sort of that there's a rule to how you evaluate prejudice in these cases. We don't look at the specific facts. No, I think we should look at the specific facts. And I think, for example, if Mr. Freeman had challenged juror 33 for cause and the district court had denied that, either erroneously or not, we don't know because it didn't happen. And then Mr. Freeman tried to use a peremptory challenge but wasn't allowed to, either because the district court misinterpreted the rules or because he had run out. Then I think Mr. Freeman would be able to say, OK, you know, I was denied this peremptory challenge erroneously. And I suffer prejudice because this is someone that I think would have been biased to me. So in the absence of a challenge for cause, the government's position is you cannot establish prejudice. I think if a challenge for cause had been made and it had been correctly denied, I'm not sure what we'd say. I think here, where the defendant hasn't brought a challenge for cause at all, in fact, didn't ask a single question of juror 33 during voir dire, I think there's no prejudice. You know, I really think there's no indication in the record that Mr. Freeman had any problem with juror 33 until he had to figure out a way he was prejudiced by this decision. And so I just don't think that the court should countenance Mr. Freeman's ex post attempt to manufacture prejudice in this case. I'll just conclude, Your Honor. Mr. Freeman said that this was not a unique case. He said that this is a classic case of buyer's remorse. I think that's an incredibly dangerous sentiment for this court to hear. You know, Mr. Freeman's theory seems to be that if a victim, if there's any evidence that a victim flirted with the defendant or was otherwise interested in the defendant, there cannot be a conviction. And that's simply not true. That runs counter to these basic principles of juries and the weighing of evidence that this court has recognized for many years. And it just trades in these very harmful stereotypes that victims are complicit in their own assaults. And so if the court has no further questions, I would ask that the court affirm the judgment below. I have one further question. That's right. This is, again, about your rule 24 argument. I was wondering if you could point us to. Well, just to start, your contention is that the change from 2002 is not substantive. It's stylistic, right? That's correct. Is there another example of omission of such language that is so, or the deletion, I guess, the removal of such language that seems to have substantive import as being viewed as stylistic? Is there another example of this kind of a rule change? I don't have an example off the top of my head, Your Honor. I would be happy to follow up if the court wanted one. I think we cited that example not as our primary argument. We think it's only appropriate to look at the history if it does not directly conflict with the text and structure. So we think that the text and structure supply this limitation. And the history just shows that the note just shows that the removal of the language shouldn't be taken to contradict that plain import. If there are no further questions. Thank you. Thank you, counsel. I'd just simply like to respond to counsel's argument that somehow the closing arguments of counsel cured the instructional error. Jurors are presumed to follow their instructions. That's the law. These jurors were also given instructions that said the arguments of counsel are not evidence. And the arguments of counsel aren't the instructions that govern your review of this case. With that, I'd just say that Mr. Freeman sorely needs a new trial. And he would request that this court reverse his conviction and amend to the district court. Thank you. Thank you, counsel. Thank you both for your arguments. They've been very helpful. The case will be submitted with counsel excused and the court will be in recess.